IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 14-cv-01245-RBJ

PATRICIA BARBER,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

ORDER

This matter is before the Court on review of the Commissioner's decision denying claimant Patricia Barber's application for Social Security disability benefits. Jurisdiction is proper under 42 U.S.C. § 405(g). For the reasons explained below, the Court reverses and remands the Commissioner's decision.

**I. Standard of Review**

This appeal is based upon the administrative record and briefs submitted by the parties. In reviewing a final decision by the Commissioner, the role of the District Court is to examine the record and determine whether it "contains substantial evidence to support the [Commissioner's] decision and whether the [Commissioner] applied the correct legal standards." *Rickets v. Apfel*, 16 F.Supp.2d 1280, 1287 (D. Colo. 1998). A decision cannot be based on substantial evidence if it is "overwhelmed by other evidence in the record." *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988). Substantial evidence requires "more than a scintilla, but less than a preponderance." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Evidence is not

substantial if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

## II. Background

Ms. Barber, who was born on January 27, 1962, lives in Pueblo, Colorado. She has previously worked as an adjustment clerk, bookkeeper, and teacher's aide, but she has not worked since her alleged onset date of August 16, 2010.

### A. Procedural History

In October of 2011, Ms. Barber filed an application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, alleging disability due to non-epileptic seizures, depression, and anxiety beginning on August 16, 2010. The claim was initially denied on February 27, 2012. The claimant then filed a request for a hearing, which was held on January 16, 2013 in front of Administrative Law Judge William Musseman. The ALJ issued a decision denying her request for benefits on January 28, 2013. The Commission denied her request for review on March 4, 2014. Ms. Barber filed a timely appeal in this Court.

### B. The ALJ's Decision

The ALJ issued an unfavorable opinion after evaluating all of the evidence according to the Social Security Administration's standard five-step process. At step one, he found that Ms. Barber had not engaged in substantial gainful activity since her alleged onset date of August 16, 2010. R. at 20. Next, at step two, the ALJ found that the claimant had the following severe impairments: a seizure disorder and obesity. R. at 20. At step three, the ALJ concluded that Ms. Barber did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix

1. R. at 21. He then found that the claimant had the residual functional capacity ("RFC") to perform medium work, "except the claimant cannot work at unprotected heights or around moving machinery; cannot work in hazardous work areas; and is unable to perform complex tasks, such that she is limited to work with an svp of 2 or less." R. at 21. Turning to step four, the ALJ found that Ms. Barber was not capable of performing any past relevant work. R. at 25. Finally, at step five, the ALJ found that there were jobs that exist in significant numbers in the national economy that the claimant could perform. R. at 25. He thus concluded that she had not been under a disability. R. at 26.

### III. Discussion

The claimant contends that the ALJ made the following errors in his opinion denying benefits: (1) the ALJ improperly assigned only little weight to the opinion of Dr. Murillo, a treating physician, (2) the ALJ did not properly weigh the conflicting medical opinions regarding Ms. Barber's mental impairments and gave undue weight to Dr. Wanstrath's opinion that she had no mental impairments, (3) the ALJ failed to assess Dr. Tendler's opinion, and (4) the ALJ's RFC determination was not supported by substantial evidence. As explained below, the Court agrees that the ALJ erred in his analysis of the weight assigned to Dr. Murillo's opinion and in his failure to address Dr. Tendler's opinion. For these reasons, the Court remands the decision to the ALJ.

#### A. Dr. Murillo's Opinion

The claimant argues that the ALJ did not give valid reasons for assigning little weight to the opinion of Dr. Murillo, one of the claimant's treating physicians. In analyzing a treating physician's opinion, the ALJ must first determine whether it should be afforded controlling weight. *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). A treating physician's opinion

"must be given controlling weight if it is well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. If the opinion is deficient in either of these respects, it is not to be given controlling weight." *Id.* If the ALJ finds that an opinion is not entitled to controlling weight, he must go on to determine what weight to assign it. *Id.* At this second step of the analysis, the ALJ must "make clear how much weight the opinion is being given . . . and give good reasons . . . for the weight assigned." The factors relevant to this determination include: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the degree to which the opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the relevant area; and (6) other factors brought to the ALJ's attention that tend to support or contradict the opinion. *Id.* at 1131.

In the present case, the ALJ did not separately address each step of the two-step analysis described above, but rather collapsed the analysis into a single finding that Dr. Murillo's opinion was entitled to "little weight."[1] *See* R. at 24. The ALJ's opinion cites a number of reasons for assigning the opinion such weight: the relatively short length of the treatment relationship, Dr. Murillo's lack of expertise in assessing neurological issues, the opinion's internal inconsistency, the lack of explanation for the conclusions in the opinion, and the fact that it is inconsistent with other evidence in the record. R. at 24–25. The claimant contends that (1) collapsing the analysis into a single step is improper and (2) the ALJ's stated reasons for giving the opinion little weight

---

[1] The claimant argues that under Tenth Circuit law, affording an opinion little weight is essentially the same as rejecting it. ECF No. 17 at 15 (citing *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012)). Although that is correct, it is not particularly relevant here. The claimant attempts to argue at various points that individual reasons the ALJ cited for "rejecting" Dr. Murillo's opinion are an insufficient basis for doing so. This line of argument, however, ignores the fact that the ALJ did not rely on any single reason, but rather considered various factors together, as the relevant law requires.

were an inadequate basis for doing so. As explained below, the Court is not persuaded by the first argument, but I find that the ALJ's opinion must be remanded because the ALJ erred in finding that Dr. Murillo's opinion was internally inconsistent.

Beginning with the first point, the Tenth Circuit has held that when an ALJ's analysis of what weight to afford a treating physician's opinion makes clear that he implicitly declined to give the opinion controlling weight, the decision should not be reversed for failing to separately address each step. *Mays v. Colvin*, 739 F.3d 569, 575 (10th Cir. 2014). *See also Tarpley v. Colvin*, 601 F. App'x 641, 643 (10th Cir. 2015) ("[A]ny imaginable oversight on this score is clearly harmless because the ALJ's ruling unambiguously demonstrates that he declined to give the opinions controlling weight."). Here, the ALJ found that Dr. Murillo's opinion was inconsistent with other evidence in the record (namely, objective diagnostic evidence, the claimant's treatment history, and her exam findings). R. at 24–25. This alone constitutes a sufficient reason for not giving the opinion controlling weight, and the Court therefore declines to remand the decision on this basis.

Turning to the claimant's second argument, the Court finds that the ALJ erred by discounting Dr. Murillo's opinion, in part, based on what he perceived as an internal inconsistency. In explaining why he gave the opinion little weight, the ALJ noted that the opinion was "internally inconsistent as [Dr. Murillo] limits the claimant's physical abilities, but then states that she really does not really [sic] have any physical limitations." R. at 24. As the claimant points out, however, the statement that Ms. Barber has "no physical limitations except kneeling, high altitude, or heights," on which the ALJ based the above conclusion, was made in response to the last question on the seizure evaluation form, which asked the doctor to describe "any *other* limitations" that would affect the claimant's ability to work. R. at 563 (emphasis

added).  Thus this statement does not in fact create an internal inconsistency in the opinion, and the ALJ's conclusion to the contrary was not supported by substantial evidence.  Furthermore, the Court cannot conclude that this error was harmless; Dr. Murillo found limitations on the claimant's ability to work beyond those included in the ALJ's RFC finding, and the Court cannot conclude with any certainty that the ALJ would have assigned the opinion the same weight without having found it to be internally inconsistent.  Accordingly, the ALJ's opinion must be remanded on this basis.

The Court additionally notes, for purposes of guidance on remand, that the remaining bases on which the ALJ assigned Dr. Murillo's opinion little weight appear to be unproblematic.  First, the ALJ cited the relatively short length of the claimant's treatment relationship with Dr. Murillo,[2] as well as the fact that Dr. Murillo is not a specialist in neurological issues,[3] R. at 24— both factors that are properly considered in the weight analysis under the relevant law, *see Krauser*, 638 F.3d at 1330.  The ALJ also found that Dr. Murillo's opinion "lacks much in the way of explanation at all," R. at 24, another consideration relevant to the weight analysis, *see* 20 C.F.R. § 404.1527 ("The better an explanation a source provides for an opinion, the more weight

---

[2] Ms. Barber argues that the ALJ misconstrued the extent of her treatment relationship with Dr. Murillo.  ECF No. 17 at 21.  She appears to be right.  The ALJ noted that Dr. Murillo "only began seeing the claimant in August 2012," and thus concluded that the short length of treatment supported the decision to give only little weight to the doctor's opinion.  R. at 24.  However, her medical records indicate that Ms. Barber first saw Dr. Murillo in June 2012.  *See* R. at 549.  Nevertheless, this error is clearly harmless; even considering the additional two months of treatment, the claimant still had a relatively short treatment relationship with the doctor.  Moreover, as the government points out, the claimant herself testified that she began seeing Dr. Murillo in August of 2012.  R. at 44.

[3] The claimant's brief emphasizes that the ALJ was not permitted to reject Dr. Murillo's opinion based on his lack of expertise while affording great weight to the opinion of Dr. Wanstrath, who may also not possess the relevant expertise.  ECF No. 17 at 22–24.  However, the ALJ did not, as the claimant contends, "summarily reject [one] physician's opinion for containing the same defect contained in the opinion that the ALJ accepted," *id.* at 24.  Rather, the ALJ carefully weighed both opinions according to the relevant factors laid out in the applicable regulations.

we will give that opinion.").[4] Lastly, the ALJ noted that the opinion was inconsistent with other evidence in the record, namely objective diagnostic evidence, the claimant's treatment history, and her exam findings. R. at 24–25. The claimant contends that the nature of her condition—non-epileptic seizures—makes verification with objective evidence impossible. ECF No. 17 at 28. However, even assuming that is the case, the claimant's treatment history is clearly inconsistent with the extent of disability described by Dr. Murillo, and the ALJ's finding that the doctor's opinion is inconsistent with other evidence in the record is therefore supported by substantial evidence.[5] In sum, although the opinion must be remanded because of the ALJ's flawed finding that Dr. Murillo's opinion is internally inconsistent, the remaining bases for his decision to assign the opinion little weight are sound.

## B. Dr. Wanstrath's Opinion

The claimant next argues that the ALJ erred in assigning great weight to the opinion of Dr. Wanstrath, a non-treating physician who opined that Ms. Barber did not have a medically determinable mental impairment, R. at 59, particularly in light of the fact that he assigned only little weight to Dr. Valette's opinion, which found that when the claimant has a seizure, her cognitive functioning, focusing, and concentration are all affected for a day or two following the seizure, R. at 511. Essentially, Ms. Barber attacks each of the ALJ's three stated reasons for assigning great weight to Dr. Wanstrath's opinion (it was rendered after a thorough review of the record, it is consistent with the record as a whole, and state agency medical and psychological

---

[4] The claimant's contention that this finding required the ALJ to further develop the record is incorrect. *See* 20 C.F.R. § 404.1520b (noting that if a physician's opinion is internally inconsistent, an ALJ "may" recontact the physician for further explanation).

[5] Ms. Barber also argues that the ALJ's finding that her seizure disorder is a severe impairment "obviate[s]" the need for "independent objective verification of the existence of seizures." ECF No. 17 at 29. While she is correct that the ALJ found as much at step two, this finding does not affect the degree to which Dr. Murillo's opinion is consistent with other evidence in the record; the ALJ was still required to properly determine what weight to assign the doctor's opinion.

7

consultants are highly qualified), then complains that the relevant legal standards did not permit the ALJ to assign this opinion more weight than that assigned to Dr. Valette's opinion. The Court is not persuaded by any of the claimant's arguments on this point.

As an initial matter, it does not appear that Dr. Wanstrath's and Dr. Valette's opinions are actually inconsistent. Dr. Wanstrath found that the claimant had "[n]o medically determinable mental impairments." R. at 59. Dr. Valette, in turn, agreed that "[a]s far as work limitations from a psychological prescriptive, there are none. They would need to be based on her seizure disorder." R. at 511. Thus, Dr. Valette reached the same conclusion as Dr. Wanstrath on the question of whether Ms. Barber had any mental impairments; moreover, both doctors characterized her seizure disorder as a physical impairment, *see* R. at 58, 511.[6] For this reason, the plaintiff's argument that the ALJ "did not properly weight the conflicting medical opinions of mental impairments" has no basis in fact, and the Court rejects it.[7]

Turning to the ALJ's stated reasons for assigning Dr. Wanstrath's opinion great weight, the ALJ first noted that the opinion "was rendered after a thorough review of the record." R. at 21. The claimant points out that a number of medical opinions in the record were issued after Dr. Wanstrath's review, and thus he did not in fact review the full record. Specifically, Dr. Wanstrath issued his opinion on February 24, 2012, R. at 59, before Dr. Tendler's opinion (R. at 518, dated June 6, 2012), Dr. Greenberg's opinion (R. at 533, dated July 5, 2012), an emergency

---

[6] This misunderstanding on the claimant's part about what should be classified as a physical, as opposed to mental, impairment comes up throughout her brief. It appears clear to the Court—based on Dr. Wanstrath's opinion, Dr. Valette's opinion, and the ALJ's analysis—that Ms. Barber's seizure disorder and any related problems (such as impaired cognitive functioning, memory loss, and impaired concentration) are classified as physical impairments. *See* R. at 20–21, 23–25, 58–59, 511. Her alleged anxiety and depression, on the other hand, would be considered mental or psychological impairments. *See, e.g.*, R. at 511.

[7] Additionally, the relevant discussion of Dr. Wanstrath's opinion is part of the ALJ's step two analysis, in which he found that the claimant's seizure disorder was a severe impairment. R. at 20–21. It is unclear what additional conclusion based on Dr. Valette's discussion of her seizure disorder the claimant believes the ALJ should have reached at this step.

8

room report following a minor car accident (R. at 535, dated June 13, 2012), Dr. McCormack's opinion (R. at 540, dated August 20, 2012), three of Dr. Murillo's reports and his Seizures Medical Source Statement (R. at 543, dated July 24, 2012; R. at 546, dated July 9, 2012; R. at 549, dated June 5, 2012; R. at 560, dated August 23, 2012), a report on a knee injury (R. at 573, dated December 2, 2012), and reports from the Centura Family Care Center (R. at 581–85, dated November 26, 2012, October 10, 2012, and August 23, 2012).

However, as the government points out, the vast majority of these later records and opinions in no way conflict with Dr. Wanstrath's conclusion that Ms. Barber has "[n]o mental medically determinable impairments," R. at 59, because they do not even address the question of whether she suffers from any mental impairments. *See* R. at 533 (discussing only the claimant's seizure disorder); R. at 534–38 (documenting hospital visit after minor car accident), R. at 540–51 (noting claimant's subjective complaints of seizures, documenting reported chest pain, and reporting treatment for a rash and other skin disease); R. at 573–79 (documenting knee injury); R. at 583–85 (reporting that Ms. Barber came in for a flu shot and documenting initial consultation). Thus Dr. Wanstrath's opinion would have in no way been changed by reviewing these later records, and it would make little sense for the ALJ to discount the opinion because the doctor did not have the opportunity to review irrelevant records.

Turning to the few later records that do touch on the issue of Ms. Barber's mental impairments, most do not undermine Dr. Wanstrath's assessment. First, Dr. Tendler concluded that the record contained insufficient evidence to determine if the claimant had any mental impairments. R. at 518. However, like Dr. Wanstrath, Dr. Tendler reviewed the claimant's file as a state agency physician, and thus his opinion would presumably not have any influence on that of Dr. Wanstrath. Second, Dr. Murillo's reports mention some memory problems associated

with the claimant's seizures. R. at 563, 581. But, as explained in note 6, *supra*, the ALJ and Ms. Barber's doctors all classified limitations stemming from the seizure disorder as physical in nature; thus these observations from Dr. Murillo do not in fact conflict with Dr. Wanstrath's finding. Dr. Murillo did note on one occasion, however, that Ms. Barber claimed to have "some depressive episodes." R. at 581. This appears to be the only evidence suggesting the presence of a mental impairment that Dr. Wanstrath did not review. In sum, the record contains a small amount of evidence relevant to Dr. Wanstrath's opinion that he did not consider. While this error may be harmless, the Court has already determined that remand is appropriate on other bases, and a harmless error analysis is therefore unnecessary here. On remand, the ALJ should consider the extent to which Dr. Murillo's later observation affects his conclusion about the weight to be afforded to Dr. Wanstrath's opinion.

Turning to the ALJ's second reason for affording Dr. Wanstrath's opinion great weight, the ALJ found that the opinion is consistent with the record as a whole. R. at 21. Ms. Barber argues that the record "is full of evidence that is contrary to the opinion of Dr. Wanstrath" that the ALJ ignored. However, again here, the claimant confuses the distinction between physical and mental impairments. *See* note 6, *supra*. All of the evidence the claimant cites concerns the effects of her seizure disorder, *see* ECF No. 17 at 34–36, and thus none of it conflicts with Dr. Wanstrath's opinion, which listed her seizure disorder as a physical impairment, *see* R. at 59. In sum, nothing the claimant's brief points to undermines the ALJ's finding that Dr. Wanstrath's opinion is consistent with the record.

Lastly, the ALJ noted that "State medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act." R. at 21 (citing SSR 96-6p). Although the claimant attempts to

argue that this reasoning runs afoul of the prescribed guidelines for weighting different types of medical opinions, the ALJ was merely quoting the relevant Social Security ruling: "State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act." SSR 96-6p. The Court therefore finds the ALJ's reliance on the presumed expertise of Dr. Wanstrath unproblematic.

In sum, it appears that the ALJ properly considered relevant factors in deciding to afford Dr. Wanstrath's opinion great weight. Although on remand the ALJ should take another look at his first stated reason for this decision—that Dr. Wanstrath thoroughly reviewed the entirety of the record—in light of Dr. Murillo's later opinion, on the whole it appears that the ALJ properly weighed Dr. Wanstrath's opinion.

### C. Dr. Tendler's Opinion

Turning to the third issue raised by the claimant, Ms. Barber argues that the ALJ failed to assess the opinion of Dr. Tendler, a State agency physician who completed a psychiatric review of the claimant's file and found that additional development of the record was necessary. R. at 518–31. Specifically, Dr. Tendler opined that "[d]evelopment [of the claimant's file] is suggested by way of obtaining medical data from treating sources if any. Otherwise, an independent psychological [consultative exam] would be in order." R. at 518. Under the relevant regulations, the ALJ was required to explain his reasons for rejecting this opinion:

> Unless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.

20 C.F.R. § 404.1527(e)(2)(ii). The government acknowledges that the ALJ failed to specifically address Dr. Tendler's opinion but argues that the error was harmless because the ALJ's opinion makes clear that he believed there was sufficient evidence in the record to make a determination about Ms. Barber's mental impairments or lack thereof.

The Tenth Circuit has made clear that "[w]here . . . we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). For example, where the ALJ had rejected an opinion "nearly identical" to one that was not addressed in the ALJ's opinion, the Circuit found that it was apparent from the ALJ's reasoning that he had rejected the latter opinion for the same reasons that he had given the former no weight. *Lately v. Colvin*, 560 F. App'x 751, 754 (10th Cir. 2014). The government argues that, given the ALJ's discussion of evidence in the record documenting a lack of mental impairments, his opinion makes clear that he rejected Dr. Tendler's opinion because there was sufficient evidence in the record to make a finding on the claimant's mental health—essentially, he rejected the doctor's opinion because it was inconsistent with the record as a whole.

However, while it seems likely that the government is correct, the Court cannot "attempt to supply a missing finding for the ALJ on legal or evidentiary matters that he did not consider." *Dye v. Barnhart*, 180 F. App'x 27, 31 (10th Cir. 2006). In the present circumstances, the ALJ's failure to address Dr. Tendler's opinion at all is not a merely technical omission; the Court cannot determine with any certainty whether the ALJ considered the factors relevant to the analysis of what weight to afford the opinion. Unlike in *Lately*, where the ALJ had articulated reasons for rejecting a nearly identical opinion, here there is nothing in the ALJ's opinion that

assures the Court that the ALJ undertook the required analysis before rejecting Dr. Tendler's opinion. For this reason, the Court finds that the ALJ did not follow the applicable legal standard, and his opinion must be remanded on this basis.

### D. The RFC Determination

Lastly, Ms. Barber contends that the ALJ's RFC finding was not supported by substantial evidence. She argues that the conclusions the ALJ reached with respect to both the claimant's mental and physical limitations are not tied to the evidence cited in the RFC discussion. The Court will address each category of limitations in turn.

Beginning with the question of Ms. Barber's mental impairments, the claimant points to the ALJ's finding that she "is unable to perform complex tasks, such that she is limited to work with an svp of 2 or less," R. at 21, and argues that (1) this restriction is inconsistent with the finding that the claimant has no mental impairments in Dr. Wanstrath's opinion, which the ALJ afforded great weight, and (2) a limitation to unskilled work does not "account for the effects of specific mental impairments." ECF No. 17 at 42–45. Again here, the claimant misunderstands the distinction between mental and physical impairments, as laid out by multiple doctors and the ALJ. *See* note 6, *supra*. The ALJ explicitly limited Ms. Barber to unskilled work with an svp of 2 or less because of the effects of her seizure disorder, a physical impairment. R. at 24. This limitation is therefore fully consistent with Dr. Wanstrath's finding that the claimant does not have any mental impairments, and the Court accordingly rejects the claimant's first argument.[8] Furthermore, even assuming the claimant is correct in arguing that a limitation to unskilled work could not account for specific mental impairments, that is beside the point; the ALJ added this

---

[8] Additionally, as the government points out, courts will not find reversible error where a claimant argues that a medical opinion adverse to the claimant's position has not been given sufficient consideration. *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) ("[I]f a medical opinion adverse to the claimant has properly been given substantial weight, the ALJ does not commit reversible error by electing to temper its extremes for the claimant's benefit.").

13

limitation only to account for the effects of Ms. Barber's seizure disorder, not any strictly mental impairments. *See* R. at 24 (finding that the claimant is limited to unskilled work because the record contained sufficient evidence "of the claimant's seizure disorder and treatment"). Thus, the Court rejects the claimant's second argument as well, and I find the limitation to unskilled work in the RFC unproblematic.

Turning to the physical restrictions included in the ALJ's RFC determination, Ms. Barber argues that the RFC finding is not supported by substantial evidence because (1) Dr. Murillo is the only physician whose opinion addresses her physical RFC and the ALJ's RFC finding differs from that offered by Dr. Murillo; and (2) the ALJ did not explain how the evidence he cites supports the RFC determination. Beginning with the first point, the Court has already found above that the ALJ should reconsider the weight assigned to Dr. Murillo's opinion on remand; accordingly, any additional weight assigned to it may impact the RFC analysis. However, if the ALJ determines on remand that the opinion should still be afforded only little weight, then he, of course, has no obligation to base his RFC finding on Dr. Murillo's conclusions, even if Dr. Murillo was the only physician to explicitly comment on the claimant's RFC.

As for the claimant's second point, the Court finds that the ALJ has provided sufficient explanation for the findings in his RFC analysis, and that these findings are supported by substantial evidence. As noted above, the ALJ found that Ms. Barber could perform medium work, "except the claimant cannot work at unprotected heights or around moving machinery; cannot work in hazardous work areas; and is unable to perform complex tasks, such that she is limited to work with an svp of 2 or less." R. at 21. The claimant argues essentially that because none of these restrictions are specifically laid out in any doctor's report, they are not supported by substantial evidence. However, as the government notes, "there is no requirement in the

regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question. The ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Chapo*, 682 F.3d at 1288 (internal citations and quotations omitted). Thus the fact that the limitations included in the RFC are not pulled directly from any particular medical opinion does not provide a basis for remand.

Moreover, the Court finds that the limitations included in the ALJ's RFC determination are supported by substantial evidence. In his explanation of the RFC finding, the ALJ noted that the claimant's obesity, in combination with her other impairments, "significantly limits her ability to do basic work activities" and concluded that her exam findings demonstrated "slightly diminished left upper and lower extremity strength that would limit her to lifting only moderately heavy objects such as those associated with a medium level of work." R. at 22, 23. Based on these considerations, he limited the claimant to medium work. The ALJ also commented that while Ms. Barber testified to significant physical limitations caused by her seizures, he found her statements only partially credible. R. at 22. Nevertheless, even if only a "small fraction" of the claimant's allegations concerning her memory loss and concentration were true, she would not be able to perform skilled or semi-skilled work. R. at 24. Thus, the ALJ added additional limitations to account for the effects of her seizure disorder (specifically, he found that Ms. Barber could not work at unprotected heights, around moving machinery, or in hazardous work areas and was unable to perform complex tasks). In sum, the ALJ's opinion is sufficiently explains why he included these physical limitations in the claimant's RFC, and the Court finds that the RFC determination is based on substantial evidence. I therefore decline to remand the decision on this basis.

**IV. Conclusion**

In sum, the ALJ erred in his analysis of what weight to afford Dr. Murillo's opinion and his failure to address Dr. Tendler's opinion. However, it is not clear that correction of these errors will necessarily change the ALJ's conclusion that benefits should be denied, and thus the Court declines to award benefits at this time. *See Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006). Therefore, the decision of the Commissioner is REVERSED and REMANDED for further findings.

DATED this 6th day of August, 2015.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge